FILED
2010 Feb-16  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARGARET MOORE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:09-CV-1167-RDP** |
| | } | |
| **STATE OF ALABAMA** | } | |
| **DEPARTMENT OF HUMAN** | } | |
| **RESOURCES, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Dismiss Third Amended Complaint (Doc. #35), filed November 10, 2009. The parties have fully briefed the matter (Docs. #35, 38), and the Motion is now properly under submission. For the reasons set forth, Defendants' Motion is due to be denied.

## I.      PROCEDURAL HISTORY

On June 10, 2009, Plaintiff filed her Complaint against Defendants Alabama Department of Human Resources ("Alabama DHR"), Jefferson County Department of Human Resources ("Jefferson County DHR"), Angela McClintock, Catherine Denard, and Terri Coley. (Doc. #1). Plaintiff alleged discrimination and retaliation in violation of federal law. (Doc. #1 ¶ 19). On July 1, 2009, Defendants answered (Doc. #7) and filed a Motion to Dismiss and for a More Definite Statement (Doc. #6). The court ordered briefing on Defendants' Motion. (Doc. #8). Plaintiff's response was due on July 8, 2009; however, she missed the deadline, and the court entered an Order requiring her to show good cause in writing on or before July 21, 2009 why Defendants' Motion should not be granted. (Doc. #10). On July 20, 2009, Plaintiff responded to the court's Order and requested an

additional five days to develop a responsive submission. (Doc. #11). The court granted Plaintiff's request and ordered the responsive submission to be filed on or before July 27, 2009. (7/21/09 Order).

On July 27, 2009, Plaintiff responded to Defendants' Motion. (Doc. #12). Additionally, Plaintiff filed her First Amended Complaint (Doc. #13) along with a Motion for Leave to Amend (Doc. #14). On July 29, 2009, the court denied Defendants' Motion to Dismiss and for a More Definite Statement and granted Plaintiff's Motion for Leave to Amend. (Doc. #15).

In response, on August 5, 2009, Defendants filed their second Motion to Dismiss aimed at Plaintiff's First Amended Complaint. (Doc. #16). The court ordered briefing, and Plaintiff's deadline for filing her responsive submission was August 12, 2009. (8/5/09 Order). On August 13, 2009, Plaintiff, having missed her submission deadline, requested an extension of time to respond. (Doc. #17). On the same day, she filed a second Motion for Leave to Amend and attached her proposed amended complaint. (Doc. #18). The court administratively terminated both Motions for failing to adhere to the court's Uniform Initial Order. (8/13/09 Order).

On August 24, 2009, finding that Plaintiff had failed to respond to Defendants' second Motion to Dismiss and for a More Definite Statement, the court granted the motion in the alternative. (Doc. #20). Specifically, the court concluded that a more definite statement was appropriate and ordered Plaintiff to file an amended complaint on or before August 31, 2009. (Doc. #20). Plaintiff complied and filed her Second Amended Complaint. (Doc. #21).

In her Second Amended Complaint, Plaintiff named the following Defendants: (1) Alabama DHR; (2) Jefferson County DHR; (3) Angela McClintock; (4) Terri Coley; (5) Kim Mashego; and (6) Patricia Muscolino. (Doc. #21). She included the following allegations against various

Defendants: (1) race discrimination in violation of Title VII; (2) age discrimination in violation of the ADEA; (3) sex discrimination in violation of Title VII and the United States Constitution; and (4) retaliation in violation of Title VII and the United States Constitution. (Doc. #21).

On September 2, 2009, Defendants filed their third Motion to Dismiss. (Doc. #22). The court ordered briefing. (Doc. #23). On September 11, 2009, Plaintiff filed her brief opposing Defendants' Motion to Dismiss. (Doc. #24). Two days later, she filed her third Motion for Leave to Amend. (Doc. #25).

The court held a status conference with the parties on October 1, 2009. (Doc. #30). After hearing the parties, the court denied without prejudice Defendants' Motion to Dismiss and granted Plaintiff's Motion for Leave to Amend. (Doc. #31). Accordingly, on October 30, 2009, Plaintiff filed her Third Amended Complaint. (Doc. #34). In her Third Amended Complaint, Plaintiff named the following Defendants: (1) Alabama DHR; (2) Jefferson County DHR; (3) Angela McClintock; (4) Catherine Denard; (5) Terri Coley; (6) Kim Mashego; and (7) Patricia Muscolino. (Doc. #34). Plaintiff's Third Amended Complaint contains eighteen counts: (1) in Counts One through Four, she alleges Title VII race discrimination and retaliation against Defendants Alabama DHR and Jefferson County DHR;[1] (2) in Counts Five through Fourteen, she alleges ADEA age discrimination and retaliation against Defendants Muscolino, McClintock, Denard, Coley, and Mashego;[2] and (3) in Counts Fifteen through Eighteen, she alleges unconstitutional race, sex, and/or age discrimination

---

[1]In Counts One, Two, Three, and Four, Plaintiff requests legal and equitable relief. (Doc. #34 at 5-12).

[2]In Counts Five through Fourteen, Plaintiff requests only equitable relief. (Doc. #34 at 13-27). In the ADEA context, Plaintiff has named these Defendants in only their official capacities. (Doc. #34 at 13-27).

3

against Defendants McClintock, Denard, Coley, and Mashego.[3]  (Doc. #34).  Plaintiff has not yet served Defendants Mashego and Muscolino.

On November 10, 2009, Defendants filed their fourth Motion to Dismiss.  (Doc. #35).  The court ordered briefing.  (11/12/09 Order).  On November 30, 2009, Plaintiff filed her opposition brief.  (Doc. #38).  Accordingly, this matter is now properly under submission.[4]

## II.    DISCUSSION

### A.    Defendants Have Moved to Dismiss Claims Not Asserted by Plaintiff

Defendants have moved to dismiss the following claims: (1) Title VII sex discrimination claims; (2) § 1981 race discrimination claims; and (3) § 1983 official capacity claims requesting monetary relief against state agents.  Plaintiff's Third Amended Complaint, however, abandoned her claims for sex discrimination under Title VII, her claims brought pursuant to § 1981, and her claims brought pursuant to § 1983 against official capacity defendants and requesting monetary relief.[5]  Accordingly, Defendants' Motion to Dismiss these claims is moot.

### B.    Defendant Alabama DHR May Have Been on Notice of Plaintiff's EEOC Charge

Defendant Alabama DHR argues that the Title VII claims against it should be dismissed because "the EEOC charge was against Jefferson County Department of Human Resources, not Alabama Department of Human Resources."  (Doc. #35 at 4).  At this stage, the court concludes that

---

[3]In Counts Fifteen through Eighteen, Plaintiff requests only equitable relief.  (Doc. #34 at 28-33).  In the § 1983 context, Plaintiff has named these Defendants in only their official capacities.  (Doc. #34 at 28-33).

[4]Defendants opted not to file a reply submission as permitted by the court's briefing schedule. (*See* 11/12/09 Order).

[5]The Complaint contains § 1983 claims against Defendants Coley, McClintock, Denard, and Mashego.  (Doc. #34).  These claims, unlike the earlier versions of the Complaint, request only equitable relief against Defendants in their official capacities.  Accordingly, Plaintiff's current § 1983 claims, as alleged, are not susceptible to the defects identified in Defendants' fourth Motion to Dismiss.

there is a substantial issue of whether Defendant Alabama DHR, although not formally named in the EEOC charge, was on notice of the administrative proceedings.

As the Eleventh Circuit explained, "[o]rdinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action.  This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII."  *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994) (citing *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126-27 (7th Cir. 1989)).  Nevertheless, "[w]here the purposes of [Title VII's charging requirement] are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts." *Id.* at 1358-59 (citing *Eggleston v. Chicago Journeymen Plumbers' Local 130*, 657 F.2d 890, 905 (7th Cir. 1981)).  To assess whether the statutory purposes are served, the court is not required to apply "a rigid test" but should consider

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id.* at 1359 (citing *Eggleston*, 657 F.2d at 906-07; *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)); *see also id.* ("Other facts may be relevant depending on the specific facts of the case.").

In this case, the interests of Defendant Alabama DHR essentially align with the interests of Defendant Jefferson County DHR.  Under Alabama law, the County Departments of Human Resources are not autonomous, municipal bodies; instead, they operate at the direction of the State

Department of Human Resources.  ALA. CODE § 38-2-8(b) ("All administrative and executive duties and responsibilities of the county department shall be performed by the county director and must be in accordance with the rules and regulations of the state department, subject to the approval of the state board."); *see also Mitchell v. Davis*, 598 So. 2d 801, 806-07 (Ala. 1992) (concluding that the Barbour County Department of Human Resources is a subdivision of the Alabama Department of Human Resources).  Accordingly, there is a substantial question of whether Plaintiff's EEOC charge was sufficient to place Defendant Alabama DHR on notice and permit participation in the conciliation process, and the court cannot resolve that question on the pleadings.[6]

## C.    The Eleventh Amendment Does Not Preclude Plaintiff's ADEA Claims

Defendants also contend that the Eleventh Amendment precludes recovery against the State of Alabama or, in this case, its Department of Human Resources.  The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. CONST. amend. XI.  "Although the text of the Eleventh Amendment does not appear to bar federal suits against a state by its own citizens, the Supreme Court long ago held that the Amendment bars these suits." *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1192 (11th Cir. 2005) (citing *Hans v. Louisiana*, 134

---

[6]Further buttressing this conclusion, Defendant Alabama DHR has not argued that it was unaware of Plaintiff's EEOC charge or would be prejudiced by participating in this litigation.  Instead, its argument targets only the fact that it was unnamed in the EEOC charge.  Thus, at this stage, the court is unable to conclude that Defendant Alabama DHR's inclusion in the litigation thwarts the statutory purposes undergirding administrative exhaustion and accompanying notice.  To the extent that notice is disputed, however, the issue is best resolved at the summary judgment phase, at which point the court may review the evidentiary record and contextually assess Defendant Alabama DHR's concern.  *See, e.g.*, *McCulley v. Allstates Technical Servs.*, No. 04-0115, 2005 U.S. Dist. LEXIS 41550, at *102-05 (S.D. Ala. June 21, 2005); *Ghoreishi v. K-Tec Elecs. Holding*, No. 02-0781, 2003 U.S. Dist. LEXIS 26576, at *17-19 (S.D. Tex. July 24, 2003).  Presently, and based on Defendant Alabama DHR's responsive submission, it is at least plausible that Plaintiff's EEOC charge accomplished Title VII's statutory goals.  Thus, Defendant Alabama DHR's Motion to Dismiss Counts One through Four is due to be denied.

U.S. 1 (1890); *Manders v. Lee*, 338 F.3d 1304, 1308 n.8 (11th Cir. 2003)).

In the context of her ADEA allegations, Plaintiff has sued Defendants Muscolino, McClintock, Denard, Coley, and Mashego in their official capacities.  (Doc. #34).  In effect, therefore, Plaintiff's ADEA allegations are aimed at Defendants Alabama DHR and Jefferson County DHR.  *See generally Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.").

Importantly, Plaintiff classifies Defendants Alabama DHR and Jefferson County DHR as "State agenc[ies]." (Doc. #34 ¶¶ 5-6).  Because Defendant Alabama DHR is an agency of the State of Alabama, it is generally entitled to Eleventh Amendment immunity.  *See, e.g.*, *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (observing that "Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued") (citation omitted); *see also Graham*, 473 U.S. at 167 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").  Furthermore, based on Plaintiff's classification, Defendant Jefferson County DHR, although operating within the geographic confines of Jefferson County, is an arm of the state as opposed to a municipal agency and, therefore, similarly shielded by the Eleventh Amendment.  *See, e.g.*, *Mack v. Ala. Dep't of Human Res.*, 201 F. Supp. 2d 1196, 1207 (M.D. Ala. 2002) (concluding that County Department of Human Resources is an agency of the State of Alabama); *Sanders v. Jefferson County Dep't of Human Res.*, 117 F. Supp. 2d 1199, 1204 (N.D. Ala. 1999) (same); *Ross v. Alabama*, 893 F. Supp. 1545, 1550 (M.D. Ala. 1995) (same); *see also Stuart v. Jefferson County Dep't of Human Res.*, 152 Fed. App'x 798, 799 n.1 (11th Cir.

2005) (describing the Jefferson County Department of Human Resources as "an Alabama State Agency, operating in Jefferson County, Alabama").  In short, based on the pleadings and absent an exception to the contrary, Defendants Muscolino, McClintock, Denard, Coley, and Mashego, as agents of Defendants Alabama DHR and Jefferson County DHR, are entitled to Eleventh Amendment immunity against Plaintiff's ADEA claims.

Under certain circumstances, Congress has the power to abrogate the state's Eleventh Amendment immunity.  To accomplish this result, Congress "must unequivocally express an intent to abrogate state immunity, and its legislative action must be 'pursuant to a valid exercise of power.'" *Ga. Higher Educ. Assistance Corp. v. Crow*, 394 F.3d 918, 922 (11th Cir. 2004) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  In *Kimel v. Florida Board of Regents*, the Supreme Court held that, although "the ADEA does contain a clear statement of Congress' intent to abrogate the States' immunity[,] . . . the abrogation exceeded Congress' authority under § 5 of the Fourteenth Amendment."  528 U.S. 62, 67 (2000); *see also Hundertmark v. Fla. Dep't of Transp.*, 205 F.3d 1272, 1277 (11th Cir. 2000) ("By prohibiting all discrimination based on an individual's age, the ADEA prohibited substantially more state employment decisions and practices than would be held unconstitutional under a rational basis standard.") (citing *Kimel*, 528 U.S. at 87-88).

Although *Kimel* precludes the private recovery of money damages against a state for a violation of the ADEA in federal court, the decision left unresolved the availability of prospective injunctive relief pursuant to the *Ex parte Young* doctrine.  In *Ex parte Young*, the Supreme Court held that "individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act,

violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."
209 U.S. 123, 155-56 (1908). The Eleventh Circuit recently crystallized this principle: "[The *Ex parte Young*] doctrine provides an exception to Eleventh Amendment immunity for lawsuits against state officials as long as the plaintiffs seek only prospective injunctive relief to stop ongoing violations of federal law." *Friends of the Everglades  v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1215 (11th Cir. 2009) (citing *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000)); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) ("[T]he Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief.") (citation omitted).

Neither the Supreme Court nor the Eleventh Circuit has considered whether a private party may sue, under the *Ex parte Young* doctrine, state officers – in their official capacities – who allegedly violate the ADEA. Nevertheless, the Supreme Court's analysis of the interplay between *Ex parte Young* and the ADA is informative. Specifically, in *Board of Trustees of the University of Alabama v. Garrett*, the Supreme Court considered whether "employees of the State of Alabama may recover money damages by reason of the State's failure to comply with the provisions of Title I of the Americans with Disabilities Act of 1990 . . . ." 531 U.S. 356, 360 (2001). The Court "held that such suits are barred by the Eleventh Amendment." *Id.*

Although Congress unequivocally intended to abrogate Eleventh Amendment immunity, the Supreme Court emphasized that "Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its [Fourteenth Amendment] § 5 power. . . . [and] the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id.* at

9

364.  In the disability context, the *Garrett* Court, referencing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985), observed that:

> States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational.  They could quite hard headedly – and perhaps hardheartedly – hold to job-qualification requirements which do not make allowance for the disabled.  If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.

*Id.* at 366-67.  Thus, finding that the ADA's protections extend beyond the requirements embedded in the Fourteenth Amendment, the Court evaluated the legislative record purportedly validating the expansive standard.  *Id.* at 368.  The Supreme Court ultimately concluded that the congressional record failed to demonstrate congruence and proportionality to the targeted violation; accordingly, the Court held that the ADA did not validly abrogate state sovereign immunity.  *Id.* at 372-74.

Nevertheless, and relevant here (albeit in *dictum*), the Supreme Court noted that a federal forum is still available to vindicate ADA rights against state entities:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination.  Title I of the ADA still prescribes standards applicable to the States.  Those standards can be enforced . . . by private individuals in actions for injunctive relief under [*Ex parte Young*].

*Id.* at 374 n.9.

In *Kimel*, like *Garrett*, the lynchpin issue concerned whether the ADEA passed the congruence and proportionality test required when Congress attempts to fashion prophylactic remedies aimed at the states.  *Kimel*, 528 U.S. at 82-83.  Just as it concluded in *Garrett*, the Court held that "[a] review of the ADEA's legislative record as a whole . . . reveals that Congress had

virtually no reason to believe that state and local governments were unconstitutionally discriminating against their employees on the basis of age." *Id.* at 91.  Thus, *Kimel* and *Garrett* are analytically identical because, in both decisions, the Supreme Court concluded in general that Congress had failed to abrogate state sovereign immunity and in particular that the remedy failed the congruence and proportionality test.

Although the Court was silent in *Kimel*, unlike *Garrett*, regarding the availability of prospective injunctive relief against state officers, given each decision's framework, there is no reason to doubt that the clarification provided in *Garrett* is equally applicable to *Kimel*. Accordingly, consistent with the *dictum* in *Garrett*, the court concludes that a private plaintiff may pursue prospective injunctive relief against a state officer pursuant to *Ex parte Young* and in order to vindicate rights provided under the ADEA.[7]  The First Circuit reached the same conclusion: "*Kimel* involved a private action for monetary damages.  Neither *Kimel*, nor Eleventh Amendment jurisprudence, prevents individuals . . . from obtaining injunctive relief against a state based upon the ADEA pursuant to [*Ex parte Young*]." *State Police for Automatic Retirement Ass'n v. Difava*, 317 F.3d 6, 12 (1st Cir. 2003) (citing *Garrett*, 531 U.S. at 374 n.9; *Laro v. New Hampshire*, 259 F.3d 1, 17 (1st Cir. 2001)).  Thus, because Plaintiff has limited her relief only to prospective injunctive relief, the Eleventh Amendment does not immunize Defendants Muscolino, McClintock, Denard,

---

[7]As the Eleventh Circuit explained, *Ex parte Young* "permit[s] suits against state officers only when those officers are 'responsible for' a challenged action and have 'some connection' to the unconstitutional act at issue." *Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (citing *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988)).  At this stage, Defendants have not contested Plaintiff's designation of Muscolino, McClintock, Denard, Coley, and Mashego as the parties responsible for the relevant employment decisions.  Accordingly, the court assumes without deciding that these Defendants indeed are the "responsible parties" for purposes of the *Ex parte Young* doctrine.  *See Harrison v. Office of the State Courts Adm'r*, No. 06-1878, 2007 U.S. Dist. LEXIS 39019, at *10-11 (M.D. Fla. May 30, 2007) ("Thus, unless the state officer named in the complaint has some responsibility to enforce the statute or provision at issue in the name of the state, the exception created by *Ex parte Young* cannot operate. Stated another way, the state officers named in the suit must have 'a special relation' to the act at issue.") (citations omitted).

Coley, and Mashego against the ADEA claims.

Additionally, in *McGarry v. University of Mississippi Medical Center*, the Fifth Circuit addressed whether the *Ex parte Young* doctrine circumvents the Eleventh Amendment barrier outlined in *Kimel*.  No. 08-60985, 2009 U.S. App. LEXIS 27349, at *6-7 (5th Cir. Dec. 14, 2009). The Fifth Circuit strongly suggested that prospective injunctive relief is available to halt state officers from violating the ADEA. *Id.* at *7.  The plaintiff in *McGarry*, however, failed to allege any claims against particular officers; instead, she asserted her ADEA claim directly against a state entity. *Id.*  Accordingly, the Fifth Circuit concluded that the Eleventh Amendment's jurisdictional proscription applied and affirmed the district court's dismissal of the ADEA claim. *Id.*

Here, unlike *McGarry*, Plaintiff has alleged ADEA violations against state officers in their official capacities.  Consequently, to the extent that *Ex parte Young* relief is unavailable against an entity as opposed to an officer, Plaintiff's allegations in this case pass muster.  *See, e.g.*, *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (keying the *Ex parte Young* doctrine to lawsuits against "state officials" as opposed to state agencies); *see also MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, No. 97-141, 1997 U.S. Dist. LEXIS 23883, at *5 (N.D. Fla. Nov. 21, 1997) ("[The Eleventh Amendment] bar applies not only to actions against the states by name but extends also to actions against such state entities . . . and to actions seeking damages against state officers in their official capacities. . . . [T]he Eleventh Amendment ordinarily does not bar actions based on the federal Constitution or laws seeking prospective injunctive or declaratory relief against state officers.").  In sum, Plaintiff's ADEA allegations against Defendants Muscolino, McClintock,

12

Denard, Coley, and Mashego are not foreclosed by the Eleventh Amendment.[8]

Finally, Defendants McClintock, Denard, and Coley[9] argue that, even though Plaintiff has sued them in their official capacities, they are not liable under the ADEA.  (Doc. #35 at 1-2).  In general, lawsuits against individual employees are not cognizable under the ADEA.  *Smith v. Lomax*, 45 F.3d 402, 404 n.4 (11th Cir. 1995) (citing *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)).  Instead, the ADEA authorizes causes of action against only an employer.  *Id.*  However, those arguments miss the mark here.  In this case, Plaintiff has not sued Defendants McClintock, Denard, Coley, Muscolino, and Mashego in their individual capacities; rather, she has named them only "in their official capacities."  (Doc. #34).

"Official capacity" lawsuits "represent only another way of pleading an action against an entity of which an officer is an agent."  *Graham*, 473 U.S. at 165 (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).  As the Middle District of Alabama explained, under the ADEA, "an official capacity suit is the same as a suit against the employer. Thus, official capacity suits against employees can be dismissed as redundant where the employer

---

[8]In addition to her ADEA claims, Plaintiff alleges *unconstitutional* age discrimination via § 1983.  (Doc. #34). The court is aware of a growing trend among federal courts to deny such a claim.  For example, in *Ahlmeyer v. Nevada System of Higher Education*, the Ninth Circuit, sitting en banc, concluded that ADEA's statutory comprehensiveness strongly suggested congressional intent to foreclose alternative remedial vindication.  555 F.3d 1051, 1060-61 (9th Cir. 2009).  Accordingly, the court held that a litigant is precluded from asserting an age discrimination claim against a state officer through a § 1983 action.  *Id.*

The Fourth, Fifth, and Tenth Circuits have reached the same conclusion.  *See Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir. 1989); *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997); *Migneault v. Peck*, 204 F.3d 1003, 1005 n.1 (10th Cir. 2000).  Other district courts in the Eleventh Circuit have agreed with this analysis.  *See McNa v. Communications Inter-Local Agency*, 551 F. Supp. 2d 1343, 1348 (M.D. Fla. 2008); *Ford v. City of Oakwood*, 905 F. Supp. 1063, 1066 (N.D. Ga. 1995); *Ring v. Crisp County Hospital Authority*, 652 F. Supp. 477, 482 (M.D. Ga. 1987).  At this point, however, Defendants have not raised this challenge.

[9]Plaintiff has not yet served Defendants Muscolino and Mashego.  In any event, the analysis applies equally to them.

13

is a properly named defendant in the lawsuit." *Wheeles v. Nelson's Elec. Motor Servs.*, 559 F. Supp. 2d 1260, 1267 (M.D. Ala. 2008); *see also Griswold v. Ala. Dep't of Indus. Relations*, 903 F. Supp. 1492, 1497 (M.D. Ala. 1995) (same).  In this case, however, Plaintiff has not alleged an ADEA violation directly against Defendant Alabama DHR or Defendant Jefferson County DHR. Consequently, the relief requested is not duplicative and, given the official capacity designation, does not amount to individual liability.  Indeed, as discussed more fully above, to the extent that Plaintiff is requesting relief against the State of Alabama and in light of the Eleventh Amendment considerations, Plaintiff is *required* to plead her ADEA claims against state officers in their official capacities as opposed to the entity itself.  Accordingly, Defendants' Motion to Dismiss Counts Five through Fourteen is due to be denied.

## III.     CONCLUSION

For the reasons set forth, Defendants' Motion to Dismiss (Doc. #35) is due to be denied.  A separate Order, consistent with this Memorandum Opinion, will be entered contemporaneously herewith.

**DONE** and **ORDERED** this _____16th_____ day of February, 2010.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

14